MOYLAN, J.
 

 Applicability of the Default Judgment Rule To Child Custody Disputes
 

 Imposing a judgment by default is a harsh sanction, but it is a measure that is sometimes called for to unclog the arteries
 
 *391
 
 of litigation. In its ordinary context, it involves a civil suit between two litigants, and what is at stake is routinely an award measured in dollars. The party suffering the loss has, in major measure, brought it upon himself. The appropriateness of the procedure is far less clear-cut, however, when a party possibly hurt by the sanction is one other than the dilatory litigant and when what is at stake is something other than dollars.
 

 This appeal raises, as a matter of first impression, the question of whether the default judgment procedure should even be available in a dispute over the custody of a child. Whereas in the ordinary civil suit, two litigants are fighting about money, in a child custody contest the very object of the suit is a real, albeit unnamed, party whose best interest transcends that of either formal litigant. Should the custody of a young child,
 
 arguendo,
 
 ever be taken away from a more fit custodian and awarded to a less fit custodian simply because the more fit custodian had been guilty of a procedural default? Should the failure to file a responsive pleading, a matter of great moment perhaps to administrative judges, ever be permitted,
 
 ipso facto,
 
 to render a mother an unfit custodial parent of her child? In such a case, does the law’s legitimate interest in unclogging the arteries of litigation “trump” the best interest of the child?
 

 It may well be, as we are unabashedly suggesting, that the default judgment procedure has no applicability in child custody cases, but it is unnecessary to propound so sweeping a holding in this case. It is enough for us to hold that, in the circumstances of this particular case, the award of a change of custody by default, without a hearing on the merits, constituted an abuse of discretion. The larger question, however, remains one that merits serious further consideration.
 

 The First Seven Years
 

 The appellant, Jennifer Flynn (“Mother”), had a child, Bryant Austin May, by the appellee, Dannie May, Jr. (“Fa
 
 *392
 
 ther”), on August 2, 1996. The Mother and Father were never married, but the Father acknowledged paternity and the couple lived together until November 17, 2000. When the Mother and Father separated, Bryant was four years of age. By informal agreement between the parents, the Mother assumed primary physical custody. Bryant lived with his Mother and his maternal grandmother in Dundalk until February of 2003. At that time, Bryant and his Mother moved into a home of their own, also in Dundalk. By virtue of the visitation schedule agreed upon by the parties, Bryant spent the weekends, from early Saturday morning until early Sunday evening, with the Father. Bryant also spent time with his Father on Monday and Wednesday evenings from 3 P.M. until 8 P.M. None of this was by court order; nor was there any court order establishing the amount of child support.
 

 The Case Goes to Court
 

 On April 10, 2003, the Father filed a petition in the Circuit Court for Baltimore County seeking both the primary physical custody of Bryant and child support from the Mother. It was at that point that procedural momentum took control of the case. The Mother was served with a copy of the Father’s petition on April 24. She attempted to respond
 
 pro se.
 
 The decision to proceed
 
 pro se
 
 was a serious tactical mistake on her part with, as this case illustrates, potentially grievous consequences. On May 21, the Mother sent to the court her one-page typewritten answer to the petition, in which she responded to each and every one of the thirteen paragraphs of the petition. On the following day, however, the clerk of the circuit court returned the response to the Mother, along with a form that had a checkmark beside the following entry:
 

 No certification of mailing or service (Md. rule 1-323) (Need to mail a copy to the other party and state that you did this on your pleading)
 

 Below that entry was the further handwritten message, “State when & how sent.” That is not a simple message for a layman to decipher.
 

 
 *393
 
 Although there was a dispute, unresolved, about whether the Mother subsequently made successful telephone contact with the Father’s attorney, the bottom line was that the Mother’s answer was never officially received by the court because of the lack of certification of service. As far as the Mother was concerned, she had answered; but officially her ineffectual attempt was a non-answer. Accordingly, the Father on June 3 filed a Request for Order of Default against the Mother because of her “failure to plead as provided by the Maryland Rule.” On that same day, the circuit court judge, the first of three to make rulings in this case, signed an Order of Default. It cannot be gainsaid that the Order of Default was properly entered. Maryland Rule 2—613(b) provides:
 

 (b) Order of default.
 
 If
 
 the time for pleading has expired and
 
 a defendant has failed to plead as provided, by these rules, the court,
 
 on written request of the plaintiff,
 
 shall enter an order of default.
 
 The request shall state the last known address of the defendant.
 

 (Emphasis supplied).
 

 As the well settled caselaw makes clear, however, that order of default, as opposed to an ultimate judgment of default, was only interlocutory. The interlocutory nature of such an order was made clear by
 
 Banegura v. Taylor,
 
 312 Md. 609, 618, 541 A.2d 969 (1988):
 

 [N]o appeal may be taken from the entry of an order of default. Likewise, an immediate appeal could not have been taken from the denial of Banegura’s motion to strike the default order.
 
 That order was interlocutory.
 

 (Emphasis supplied). See also
 
 O’Connor v. Moten,
 
 307 Md. 644, 647 n. 2, 516 A.2d 593 (1986);
 
 Adams v. Mallory,
 
 308 Md. 453, 459-60, 520 A.2d 371 (1987) (“[A]n order of default is no longer appealable as a final judgment.”);
 
 Curry v. Hillcrest Clinic,
 
 337 Md. 412, 425-26, 653 A.2d 934 (1995);
 
 Breuer v. Flynn,
 
 64 Md.App. 409, 420, 496 A.2d 695 (1985);
 
 Bliss v. Wiatrowski,
 
 125 Md.App. 258, 265, 724 A.2d 1264 (1999) (“[A]n order of default is interlocutory in nature and can be revised
 
 *394
 
 by the court at any time up until the point a final judgment is entered.”);
 
 Holly Hall v. County Banking and Trust,
 
 147 Md.App. 251, 261-62, 807 A.2d 1201 (2002). See also Paul Niemeyer and Linda Schuett,
 
 Maryland Rules Commentary
 
 at 469-74 (2d ed.1992).
 

 In the World of Contumacy, There Are Degrees of Contumaciousness
 

 We interrupt the narrative for a moment to place in perspective what the Mother had done wrong so as to incur the order of default. The nature of her legally inefficacious effort to file a proper response bears not, of course, on the technical actuality of a pleading failure, but on the degree of blameworthiness of that failure. The caselaw tells us that the severity of the sanction must be commensurate with the flagrancy of the procedural failure.
 

 In
 
 Holly Hall v. County Banking and Trust, supra,
 
 this Court held that a trial judge had abused his discretion in failing to vacate a judgment by default. The appellant in that case had unquestionably been guilty of a procedural failure in that “counsel prepared responsive pleadings but ‘inadvertently’ failed to file them.” 147 Md.App. at 267, 807 A.2d 1201. Notwithstanding that failure, Judge James Eyler observed for us that “there was no suggestion by appellee that appellants or their counsel acted wilfully or contumaciously.”
 
 Id.
 
 There is similarly no suggestion in this case that the Mother, in failing to satisfy the certification of service requirement, “acted wilfully or contumaciously.” In that case, Judge Eyler held:
 

 In light of appellants’ showing -with respect to a defense on the merits, and
 
 considering all relevant circumstances as to whether “it is equitable to excuse the failure to plead,
 
 ” we hold that the circuit court abused its discretion in failing to vacate the order of default.
 

 Id.
 
 (emphasis supplied).
 

 The Hearing Was Apparently Still on the Track
 

 Curiously, the Order of Default further directed that “testimony to support the allegations of the Complaint be taken
 
 *395
 
 before one of the Standing Masters of this Court.” The Mother received proper notice that the Order of Default had been filed on June 4 and that she had 30 days within which to move to vacate the order. She filed no such motion.
 

 Notwithstanding the Order of Default, which was filed on June 4, subsequent developments gave the appearance that the case was still on track for a hearing on the merits, and this may have contributed to the
 
 pro se
 
 Mother’s going procedurally astray. On July 8, a notice was sent to the parties scheduling a hearing on August 1 on the “issues of custody, visitation and child support (Default).” Also on July 8, the attorney for the Father wrote to the Mother, requesting her answers to the interrogatories that had been mailed to her on May 14. The Mother submitted her answers on July 31 and the Father utilized some of that information at the hearing on August 1. The Mother appeared at the hearing on August 1 with five witnesses, who were prepared to testify on her behalf.
 

 The Procedural Crack of Doom
 

 At the very outset of the August 1 hearing, the trial judge, the second to make rulings in this case, advised the Mother that neither she nor any of her witnesses would be permitted to testify and that she would not be permitted to offer evidence of any kind.
 

 [COUNSEL FOR FATHER]: Your Honor, this is a Petition for, to establish custody. Mrs. Flynn was served with it. Failed to file an Answer. An Order of Default was entered on June 3, 2003. Ms. Flynn failed to take any steps to have the Order of Default stricken. And, as a result, this case was set in for a half an hour hearing today, based upon the fact that the Default stands.
 

 THE COURT: Yes, the record should reflect that Judge Turnbull signed the Order of Default on June the 3rd. 30 days has elapsed. There’s no Motion to Strike. There’s been no response.
 

 Do you understand what that means, Ms. Flynn?
 

 
 *396
 
 MS. FLYNN: No sir.
 

 THE COURT:
 
 Well it means that you can’t contest anything that’s been asked, cause you didn’t answer it.
 
 Now what are you asking for Ms. Lewis?
 

 (Emphasis supplied).
 

 At that point, even counsel for the Father balked at the sternness of the court’s position and strongly suggested 1) that the Mother should at least be allowed to proffer what her witnesses would say and 2) that the Mother should be permitted to tell the court “what she thinks about this case.”
 

 [COUNSEL FOR FATHER]: Your Honor, we were asking for [is] to be the primary physical custodian of the minor child in this case. You know,
 
 this is, this is one of these troubling situations
 
 that one of my, that one of my esteemed colleagues, Mr. Lawlor, and I were discussing,
 
 what a Default does in a case where there’s children involved and whether, the court is bound to act in the best interest of the child. My suggestion,
 
 Your Honor,
 
 would be that
 
 perhaps that, that
 
 both sides agree to present information to the court by way of a proffer.
 
 That way then, you know, you get to hear both sides rather than having, I believe that
 
 Ms. Flynn showed up with five people who wanted to testify on her behalf today.
 
 But
 
 I would think that if she proffered to the court what each of those people would say, as well as
 
 tell you
 
 what she thinks about this case,
 
 and we would do the same thing,
 
 that you might be able to make a decision.
 
 I know that
 
 the issue of a default in a custody matter,
 
 I believe,
 
 is currently on appeal right now and has not been decided.
 

 (Emphasis supplied).
 

 The court nonetheless remained adamant.
 

 THE COURT: Well with all due respect, your esteemed colleague, Mr. Lawlor,
 
 the court has rules that it goes by. I think that the Default Judgment in the custody cases are handled perfectly fine. She defaults. She might have five
 
 
 *397
 

 witnesses out there. They’re not entitled to be heard in a default.
 

 (Emphasis supplied).
 

 The consideration of the decision to award the custody of Bryant to his Father was then very summary. The Mother was advised of her right to get an attorney and to seek to have the custody award modified.
 

 THE COURT:
 
 [T]he continued best interest of the child is what guides things. So custody’s awarded to him.
 
 She has a right now to go get a lawyer and file a Motion for Modification of that or [a] change, because the custody of the child is always in the best interest of the child. And the court always has jurisdiction. Continuing jurisdiction. So you can file a Motion to say why it should be changed. And why you should have custody of the child, if you’re contesting the custody. That’s what has to be done.
 

 (Emphasis supplied).
 

 There was no information offered to the court about the fitness of either parent. The sum total of the information about Bryant consisted of 1) his age and 2) his gender.
 

 [COUNSEL FOR FATHER]: Okay. Then, Your Honor, then we would ask that you award custody, physical, primary physical custody to Mr. May. That, I believe the parties should be able to work out an access schedule among themselves. That’s what they’ve been doing for three years.
 

 THE COURT:
 
 How old is this child?
 

 [COUNSEL FOR FATHER]:
 
 The child will be seven tomorrow.
 

 THE COURT:
 
 Is it a boy or a girl?
 

 [COUNSEL FOR FATHER]: A
 
 boy.
 

 THE COURT: A
 
 little boy. All right.
 

 [COUNSEL FOR FATHER]: And
 

 
 *398
 
 THE COURT: Well custody’s awarded to Mr. May, subject to your right to file a Motion of Modification.
 

 (Emphasis supplied).
 

 Again with no information from the Mother, the court ordered her to pay child support in the amount of $221.00 per month.
 

 [COUNSEL FOR FATHER]: Your Honor, in terms of child support, I’ve run guidelines. I mean Mr. May has been paying child support to Ms. Flynn. He, since that was entered, his income has changed. And I believe her income has changed. She’s working part time. I did guidelines, I did them full time and I did them part time so the court could determine. Based upon an hourly rate, I used an hourly rate of $7.50 per hour. Although she did advise, she answered Interrogatories yesterday and handed them to me, Your Honor, and said that, that she was making $9.00 an hour, at 25 hours a week.
 
 So child support is either $186.00 for her to pay or $221.00 depending upon whether it’s gonna be full time or part time employment.
 
 And I can, let the record reflect I’m handing her a copy of the guideline worksheets.
 

 THE COURT: All right. Well you prepare the Order and present it to me. He gets custody of the child and the child support will be in accordance with the guidelines.
 

 [COUNSEL FOR FATHER]:
 
 Based upon full time employment?
 

 THE COURT:
 
 Yes.
 

 (Emphasis supplied).
 

 The court’s parting words to the Mother gave the impression that she was being sanctioned, at least temporarily, because of her failure to have obtained counsel.
 

 THE COURT:
 
 Do you understand what you gotta do?
 

 MS. FLYNN: Yes sir.
 

 THE COURT: What?
 

 MS. FLYNN: I need to file a Motion.
 

 
 *399
 
 THE COURT:
 
 You need to get a lawyer.
 
 Okay?
 
 When you represent yourself you have a fool for a client. Get a lawyer. Okay.
 

 (Emphasis supplied).
 

 The Motion to Alter or Amend
 

 The default judgment was filed on August 6. Shortly after the hearing, the Mother did get a lawyer, through the Legal Aid Bureau, and, on August 18, filed a Motion to Alter or Amend the Judgment pursuant to Rule 2-534. The motion included affidavits recounting the history of the case, an explanation of the Mother’s failure to file a properly certified answer, and argument demonstrating a meritorious defense. On September 15, the Motion to Alter or Amend was denied by a third circuit court judge, without a hearing and without explanation.
 

 The Ameliorating Flexibility of Rule 2-613(e)
 

 Our conclusion is that the circuit court applied the default judgment rule too rigidly and failed to take into proper consideration the more flexible subsections, (e) and (f), that ameliorate subsection (b)’s facial harshness. Subsection (e) builds into the default judgment procedure a discretionary flexibility in those cases in which, following an order of default, the defendant, pursuant to subsection (d), moves within 30 days to vacate the order of default, stating in that motion “the reasons for the failure to plead and the legal and factual basis for the defense to the claim.” In such a case, subsection (e) provides:
 

 (e) Disposition of motion. If the court finds that there is
 
 a substantial and sufficient basis for an actual controversy as to the merits of the action
 
 and that it is equitable to excuse the failure to plead, the court shall vacate the order.
 

 (Emphasis supplied).
 

 To be sure, the Mother did not move to vacate the order of default within the prescribed 30 days after its entry and did not, therefore, compel the court to consider whether 1) there
 
 *400
 
 was “a substantial and sufficient basis for an actual controversy as to the merits of the action” or 2) it was “equitable to excuse the failure to plead.” The failure of the Mother to satisfy subsection (d) by filing a motion to vacate within 30 days, however, does not preclude the court from exercising,
 
 sua sponte,
 
 its discretion to notice such issues.
 

 In
 
 Banegura v. Taylor,
 
 312 Md. 609, 619, 541 A.2d 969 (1988), the defendant, following the entry of an order of default against him, failed to file a timely motion to vacate.
 

 With respect to the entry of the order of default, there was no error. Banegura was personally served on October 26, 1984, a fact he readily acknowledged.
 
 He did not respond within thirty days, and the order of default was therefore properly entered.
 
 Notice of the default was received by Banegura, yet Banegura took no action to have the default set aside within the thirty days permitted by Rule 2-613(c). His motion to strike was not filed until sixty-seven days after the entry of the default order.
 

 (Emphasis supplied).
 

 The defendant’s failure, however, does not foreclose the trial judge’s discretionary notice of an issue if “the interest of justice” would nonetheless indicate that the order of default should be modified. Judge McAuliffe observed for the Court of Appeals:
 

 Banegura’s motion to strike,
 
 filed more than thirty days after the entry of the order of default,
 
 must be viewed as a request that the trial court invoke its authority to revise
 
 an order intended to be final in nature, but which was, in fact, interlocutory.
 
 A trial judge possesses very broad discretion to modify an interlocutory order where that action is in the interest of justice.
 

 Id.
 
 (emphasis supplied). See also
 
 Michaels v. Nemethvargo,
 
 82 Md.App. 294, 298-300, 571 A.2d 850 (1990).
 

 Our point, for the moment, is not yet that the trial court, on August 1, abused its discretion, but only, as we build our syllogism, that it, at the very least, possessed the discretion to take note of the issues described in subsection (e) and was not
 
 *401
 
 precluded from doing so by the Mother’s failure to satisfy subsection (d). A court must possess discretion before it can abuse it. That the court possessed such discretion, even under subsection (e), is the immediate premise that we are stating. Proceeding from that premise, the question will ultimately arise as to whether the court’s
 
 sua sponte
 
 obligation to consider the best interest of the child does not, ipso
 
 facto,
 
 create 1) “a substantial and sufficient basis for an actual controversy as to the merits of’ the award of custody and 2) a concomitant duty to override any order that would otherwise prevent him from receiving evidence as to those merits.
 

 Canter v. Harris,
 
 312 Md. 371, 539 A.2d 1127 (1988), also supports our conclusion that a trial court possesses the inherent discretion to notice the issues listed in subsection (e) notwithstanding the failure of the defendant to satisfy subsection (d). In
 
 Carter v. Harris,
 
 an order of default was entered against a defendant. The defendant moved to vacate that order and the trial court granted the motion. This Court reversed the trial court because the motion to vacate failed to satisfy the requirement of what is now Rule 2-613(d). 71 Md.App. 257, 524 A.2d 1250 (1987). We held:
 

 Reversal is required because appellee’s motion to vacate the order of default contained neither a legal nor a factual basis for a defense of the claim.
 

 71 Md.App. at 263, 524 A.2d 1250. The Court of Appeals, in turn, reversed this Court. It first characterized, 312 Md. at 375-76, 539 A.2d 1127, our decision:
 

 On appeal the Court of Special Appeals held that Judge Kaplan erred in vacating the default order.
 
 Harris v. Carter,
 
 71 Md.App. 257, 524 A.2d 1250 (1987). The court reasoned that Carter’s motion to vacate contained neither the legal nor the factual basis for her defense, in contravention of Rule [2—613(d)]; that Carter’s answer to Harris’ complaint did not cure this defect; and that Judge Kaplan therefore abused his discretion in vacating the default order.
 

 Chief Judge Robert C. Murphy, writing for the Court of Appeals, held unequivocally that, although a defendant’s fail
 
 *402
 
 ure to satisfy Rule 2—613(d) would permit the denial of the motion to vacate the default order, it would not compel such denial.
 

 [W]e are of the view that, though
 
 there was noncompliance with Rule 2-613,
 
 and for that reason
 
 the motion to vacate could properly have been denied,
 
 nevertheless
 
 Judge Kaplan was not,
 
 in the circumstances,
 
 compelled to follow that course.
 

 312 Md. at 378, 539 A.2d 1127 (emphasis supplied). See also
 
 Banegura v. Taylor,
 
 312 Md. at 620, 541 A.2d 969.
 

 In
 
 Bliss v. Wiatrowski,
 
 125 Md.App. 258, 265, 724 A.2d 1264 (1999), Judge Sonner noted for this Court that “an order of default [as opposed to a judgment of default] is interlocutory in nature and can be revised by the court at any time up until the point a final judgment is entered.” He explained:
 

 [D]espite the fact that Mr. Wiatrowski’s letter was not sent to the court within the thirty-day time frame as prescribed by the rules, the order of default was subject to
 
 the court’s plenary revisory power, so it was well within
 
 the comt’s discretion to set it aside.
 
 Furthermore, we note that
 
 “a trial judge has broad discretion to modify an interlocutory order where that action is in the best interests of justice.”
 

 125 Md.App. at 267, 724 A.2d 1264 (emphasis supplied).
 

 Guidelines for Interpreting Rule 2-613
 

 In
 
 Holly Hall v. County Banking,
 
 147 Md.App. 251, 263, 807 A.2d 1201 (2002), Judge James Eyler characterized
 
 Bliss v. Wiatrowski
 
 as an opinion “stating that the trial court’s decision to vacate default judgment was consistent with
 
 the policy of liberal exercise of discretion.”
 
 (Emphasis supplied). Judge Eyler went on to point out that
 
 “[tjechnicality, while important, should not be elevated to an exalted status.”
 
 147 Md.App. at 266, 807 A.2d 1201 (emphasis supplied). As to the disfavored status of default judgments, he concluded:
 

 [T]he Maryland Rules and caselaw contain
 
 a preference for a determination of claims on their merits; they do not favor imposition of the ultimate sanction absent clear support.
 

 
 *403
 
 147 Md.App. at 267, 807 A.2d 1201 (emphasis supplied). Judge Eyler also quoted with approval, 147 Md.App. at 262, 807 A.2d 1201, from
 
 Royal Insurance Co. of America v. Miles and Stockbridge, P.C.,
 
 133 F.Supp.2d 747, 768-69 (D.Md.2001), wherein Chief Judge Smalkin had said, with respect to the Maryland law on default judgments:
 

 Maryland courts have repeatedly held that
 
 a trial court’s discretion to vacate default judgments “must be exercised liberally, lest technicality triumph over justice.”
 

 (Emphasis supplied). See also
 
 Eshelman Motors Corp. v. Scheftel,
 
 231 Md. 300, 301, 189 A.2d 818 (1963).
 

 Both the guidelines quoted above for interpreting Rule 2-613 and the caselaw stressing the availability of broad ameliorating discretion apply with equal force to situations involving both subsection (e) and subsection (f) of Rule 2-613 and to arguably similar situations that do not fall squarely under either subsection. What is being expressed is a broad philosophical approach to default judgment, the idea that technicality must not triumph over justice. That philosophy is not to be narrowly or stingily caged.
 

 The Ameliorating Flexibility of Rule 2-613(f)
 

 Rule 2-613(f) also spells out the discretionary flexibility available to a trial court in those cases 1) in which no motion to vacate under subsection (d) had even been filed or 2) in which such motion had been filed and denied. The subsection provides that a court MAY enter a judgment by default. It does not say that it must do so.
 

 (f) Entry of judgment. If a motion was not filed under section (d) of this Rule or was filed and denied,
 
 the court, upon request, may enter a judgment by default
 
 that includes a determination as to liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (d) of this Rule was mailed.
 
 If,
 
 in order to enable the court to enter judgment,
 
 it is necessary
 
 to take an account or to determine the amount of damages or
 
 to establish the truth of any
 
 
 *404
 

 averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate,
 
 and; if requested, shall preserve to the plaintiff the right of trial by jury.
 

 (Emphasis supplied).
 

 It is the broad discretion embodied in the latter part of subsection (f) that is particularly pertinent to the determination in this case of the custody of a child.
 

 IF ... IT IS NECESSARY ... TO ESTABLISH THE TRUTH OF ANY AVERMENT BY EVIDENCE OR TO MAKE AN INVESTIGATION OF ANY MATTER, THE COURT MAY ...
 

 (Emphasis supplied). That is a sweeping grant of discretionary authority and child custody is quintessentially a ground on which technicality and justice may be in stark collision.
 

 Default Under Rule 2-613 Does Not Extend To the Ultimate Relief That Is Sought
 

 To understand the inherent limits on the default judgment procedure as it was applied in this case, one must begin with an appreciation of the fact that a child custody case is not a tort case. The default judgment rules essentially arose out of tort cases. In tort cases, there is a clean bifurcation between the issue of liability and, once that is established, the further and separate issue of damages. In a tort case in which the defendant has failed to plead and in which an order of default on the issue of liability is properly granted, damages must still be proved. The default does not extend to the question of damages. The plaintiff does not receive the relief he asked for in his complaint simply because the defendant, by failing to plead, defaulted.
 
 Banegura v. Taylor,
 
 312 Md. at 618, 541 A.2d 969, was clear:
 

 [T]he order of default was correctly entered, but a judgment should not have been entered until there had been
 
 satisfactory proof of damages.
 

 (Emphasis supplied).
 

 Maryland Rules Commentary,
 
 472-73, is clear that a defendant, even though he has defaulted and may not, therefore,
 
 *405
 
 offer evidence on the issue of liability, may nonetheless appear and present evidence on the distinct issue of damages.
 

 [Jjudgment may be entered in an amount determined by the court.
 
 To determine that amount, the court may rely on
 
 affidavits or
 
 any other means, including a hearing or jury trial.
 
 If, for example, the value of pain and suffering are at issue, the plaintiff may wish to demand that a jury assess the amount of damages, in which case a jury trial will take place on that issue.
 
 In any hearing held before entry of judgment, the defendant may appear to present evidence on the issue of damages, but may not offer evidence on liability.
 
 The issue of liability is foreclosed by reason of the order of default.
 

 (Emphasis supplied).
 

 Writing for this Court in
 
 Miller v. Miller,
 
 70 Md.App. 1, 22 n. 11, 519 A.2d 1298 (1987), Judge Robert M. Bell was very clear:
 

 Moreover,
 
 where the relief
 
 to which the party obtaining the judgment is entitled
 
 remains to be determined, the defaulting party has the right to participate in any hearing for that purpose and to present evidence on the issue.
 

 (Emphasis supplied).
 

 In
 
 Adams v. Mallory,
 
 308 Md. 453, 460, 520 A.2d 371 (1987), Judge Couch was emphatic that, even after an order of default as to liability, a full evidentiary hearing may be required “to determine the relief to be awarded against the defaulting party.”
 

 Ordinarily,
 
 the court will have to determine the relief to be awarded against the defaulting party before there is a final judgment
 
 on the claim involved in the default. Rule 2-613(e) makes this clear by providing that
 
 “[i]f
 
 in order to enable the court to enter judgment,
 
 it is necessary
 
 to take an account or to determine the amount of damages or
 
 to establish the truth of any averment by evidence or to make
 
 
 *406
 

 an investigation of any matter, the court may ... conduct hearings[.]”
 

 (Emphasis supplied).
 

 There are whole categories of cases in which the tort law’s neat bifurcation of issues does not apply. In those types of cases, in which the complaint goes immediately to the relief sought, -without pausing at any intermediate threshold such as liability, default judgment procedures, if indeed applicable at all, would appear to have severely limited applicability.
 
 Maryland Rules Commentary,
 
 473-74, points out the more limited utility of the default judgment rule in divorce actions.
 

 In connection with a default judgment in a divorce action, the divorce rule that corroborative testimony be provided by the plaintiff is an additional requirement that must be satisfied before the court will enter judgment.
 
 See Rule S75. That evidence should be provided after both the order of default is entered pursuant to section (a) and notice is mailed under section (b).
 
 The taking of corroborative testimony in a divorce action is part of the process described in section (e),
 
 which provides that,
 
 “if, in order to enable the court to enter judgment, it is necessary ... to establish the truth of any averment by evidence ...
 
 the court may ... conduct hearings or order references [e.g., to a master] as appropriate----”
 
 The court may not enter a default judgment of divorce until it is satisfied that the requirements of Rule S75 have been met.
 

 (Emphasis supplied). See also
 
 Miller v. Miller,
 
 70 Md.App. at 22 n. 11, 519 A.2d 1298.
 

 Maryland Rules Commentary,
 
 474, also notes that “a default judgment cannot be entered against the putative father in a paternity action.” And see
 
 Adams v. Mallory,
 
 308 Md. 453, 520 A.2d 371 (1987).
 

 The Special World of Child Custody
 

 There was no bifurcation of issues in the present case. The Father’s complaint directly sought the primary physical custody of Bryant. That was the ultimate relief sought. If analo
 
 *407
 
 gies have to be made, (they are, however, totally inapt), the awarding of child custody would be far more akin to
 
 Banegura v. Taylor’s
 
 ultimate determination of damages than to its threshold issue of liability. In a type of case in which there is a single unbifurcatable issue, an analogy to how default judgment is handled in the context of tort cases is impossible.
 

 If the necessity for corroboration in a divorce action makes default judgment inappropriate in such a case,
 
 a fortiori,
 
 default judgment cannot substitute for a full evidentiary hearing when a court, in order to determine custody, must first determine the best interest of the child.
 

 The absolute obligation on the trial judge to undertake a thorough examination of all possible factors before determining child custody was forcefully set out by Judge McAuliffe in
 
 Taylor v. Taylor,
 
 306 Md. 290, 303, 508 A.2d 964 (1986):
 

 Formula or computer solutions in child custody matters are impossible because of the unique character of each case, and the subjective nature of the evaluations and decisions that must be made. At best we can discuss the major factors that should be considered in determining whether joint custody is appropriate, but in doing so we recognize that none has talismanic qualities, and that no single list of criteria will satisfy the demands of every case.
 

 We emphasize that
 
 in any child custody case, the paramount concern is the best interest of the child. ... The best interest of the child is therefore not considered as one of many factors, but as the objective to which virtually all other factors speak.
 

 (Emphasis supplied).
 

 In
 
 Ross v. Hoffman,
 
 280 Md. 172, 174-75, 372 A.2d 582 (1977), Judge Orth stressed that the best interest of the child is always the paramount and overriding consideration:
 

 In performing its child protection function and its private-dispute settlement function
 
 the court is governed by what is in the best interest of the particular child and most conducive to his welfare. This best interest standard is
 
 firmly entrenched in Maryland and is deemed to be
 
 of transcen
 
 
 *408
 

 dent importance.
 
 In
 
 Burns v. Bines,
 
 189 Md. 157, 162, 55 A.2d 487 (1947), we observed that the statute giving equity courts jurisdiction over the custody of children “is declaratory of the inherent power of courts of equity over minors, and
 
 [such jurisdiction] should be exercised with the paramount purpose in view of securing the welfare and promoting the best interest of the children.”
 
 We said in
 
 Butler v. Perry,
 
 210 Md. 332, 342, 123 A.2d 453 (1956): Of course, it is too elementary to be stressed that
 
 the welfare of the child is the controlling test in a custody case.
 

 The best interest standard controls when the dispute over custody of a child is between his biological father and mother.
 

 (Emphasis supplied).
 

 Ross v. Hoffman
 
 then catalogued the many ways in which the Maryland cases have attempted to express the paramount importance of the best interest of the child:
 

 Characterized as
 
 “of transcendent importance
 
 ” in
 
 Dietrich v. Anderson,
 
 185 Md. 103, 43 A.2d 186 (1945) the decisiveness of the best interest standard is emphasized by the various other ways reference is made to it in our opinions. For example, it was characterized as
 
 the “ultimate test”
 
 in
 
 Fanning v. Warfield,
 
 252 Md. 18, 248 A.2d 890 (1969);
 
 the “determining factor”
 
 in
 
 Heaver v. Bradley,
 
 244 Md. 233, 223 A.2d 568 (1966);
 
 the “paramount consideration”
 
 in
 
 Glick v. Glick,
 
 232 Md. 244, 192 A.2d 791 (1963);
 
 the “sole question”
 
 in
 
 Young v. Weaver,
 
 185 Md. 328, 44 A.2d 748 (1945);
 
 the “paramount question”
 
 in
 
 Piotrowski v. State,
 
 179 Md. 377, 18 A.2d 199 (1941).
 

 280 Md. at 175 n. 1, 372 A.2d 582 (emphasis supplied).
 

 Although the Father in this case would have the custody of Bryant turn upon the procedural gamesmanship of the litigation between him and the Mother, in
 
 Kartman v. Kartman,
 
 163 Md. 19, 22, 161 A. 269 (1932), the Court of Appeals emphatically declared that their interests are relatively insignificant:
 

 
 *409
 
 When the custody of children is the question ...
 
 the best interest of the children is the paramount fact. Rights of father and mother sink into insignificance before that.
 

 (Emphasis supplied).
 

 In
 
 Montgomery County v. Sanders,
 
 38 Md.App. 406, 419, 381 A.2d 1154 (1977), Chief Judge Gilbert described what a child custody determination unavoidably calls for on the part of the judge making such a call:
 

 Present methods for determining a child’s best interest are time-consuming, involve a multitude of intangible factors that ofttimes are ambiguous. The best interest standard is an amorphous notion, varying with each individual case, and resulting in its being open to attack as little more than judicial prognostication.
 
 The fact finder is called upon to evahmte the child’s life chances in each of the homes competing for custody and then to predict with whom the child mil be better off in the future.
 

 (Emphasis supplied).
 

 He went on to catalogue some of the myriad factors that must be considered:
 

 What critics of the “judicial prognostication” overlook is that the court examines numerous factors and weighs the advantages and disadvantages of the alternative environments. ...
 
 The criteria for judicial determination includes, but is not limited to,
 
 1) fitness of the parents, 2) character and reputation of the parties, 3) desire of the natural parents and agreements between the parties, 4) potentiality of maintaining natural family relations, 5)
 
 preference of the child,
 
 6) material opportunities affecting the future life of the child, 7) age, health and sex of the child, 8) residences of parents and opportunity for visitation, 9) length of separation from the natural parents, and 10) prior voluntary abandonment or surrender.
 

 38 Md.App. at 420, 381 A.2d 1154 (emphasis supplied).
 

 In the present case, for instance, did seven-year-old Bryant forfeit his opportunity to tell the judge what his preference might have been? There was obviously no way that an
 
 *410
 
 informed decision as to the best interest of Bryant could be made based only on the information that he 1) was seven years old and 2) was a boy.
 

 The Rights of Bryant May Not be Forfeited by His Mother
 

 Seven-year-old Bryant had an indefeasible right to have any custody determination concerning him made, after a full evidentiary hearing, in his best interest. He did not lose that right when his Mother failed to file a proper responsive pleading to the Father’s complaint.
 
 Rolley v. Sanford,
 
 126 Md.App. 124, 727 A.2d 444 (1999), is very much in point. A mother with the primary physical custody of two young children filed a petition requesting additional child support from her ex-husband, the children’s father. The mother, however, obdurately refused 1) to comply with requested discovery or 2) to answer interrogatories, even after the court directly ordered her to do so. As a sanction for her obduracy, her petition to increase child support was ultimately dismissed.
 

 On her appeal to this Court, we agreed that her procedural breaches were very serious. We then held, however, that her children could not be made to suffer because of her defaults.
 

 Here,
 
 we agree with the circuit court that Rolley’s refusal
 
 to provide the relevant tax returns or to answer adequately the cited interrogatories
 
 is very serious. Nevertheless, this case ultimately involves not Rolley but the welfare of her two children
 
 by Sanford. For this reason, the dismissal of Rolley’s petition—an extreme sanction—is well removed from any center mark we can imagine and beyond the fringe of what we deem minimally acceptable.
 

 Where there exists a discovery violation
 
 in a child support matter,
 
 as always,
 
 the best interest of the child is paramount
 
 and a trial court must exhaust every available remedial step to enforce discovery before the extreme sanction of dismissal may be ordered.
 
 We shall not suffer the obdurate conduct of a recalcitrant parent,
 
 stepparent, or custodian
 
 to deprive children of their right to adequate support.
 

 
 *411
 
 For this reason, we will vacate the dismissal of Rolley’s petition and remand the case for further proceedings.
 

 126 Md.App. at 131, 727 A.2d 444 (emphasis supplied). Since the day of his birth, Bryant had been in the primary physical custody of his Mother. To be, at seven years of age, suddenly taken from his Mother, uprooted from his home, displaced from his neighborhood, and removed from his school certainly represented at least as much trauma to him as that represented by the failure to enjoy an increase in child support that was not to be countenanced in
 
 Rolley v. Sanford.
 

 In
 
 Klupt v. Krongard,
 
 126 Md.App. 179, 202, 728 A.2d 727 (1999), we commented on the tight scrutiny that will be focused on the discretionary imposition of sanctions for procedural breaches when considerations such as child support or child custody are on the table.
 

 In some very specific circumstances, as in the areas of child custody and support,, even further scrutiny will be given to dismissals and default judgments
 
 for discovery abuse. “Where there exists a discovery violation in a child support matter, as always, the best interest of the child is paramount and a trial court must exhaust every available remedial step to enforce discovery before the extreme sanction of dismissal may be ordered.”
 

 (Emphasis supplied).
 

 Our Holding
 

 As sorely tempted as we are to hold flatly that the default judgment procedure of Maryland Rule 2-613 is not applicable to child custody disputes, it is not necessary to go so far. We are content to hold that, at the hearing on August 1, 2003, the trial court, in the circumstances of this case, abused its discretion when it ordered a change in the primary physical custody of Bryant without permitting witnesses to testify or other evidence to be offered. We nevertheless note that it is impossible for us to conjure up a hypothetical in which a judgment by default might ever be properly entered in a case of disputed child custody. We are not hereby transforming
 
 *412
 
 our dicta into a holding. We are, however, unabashedly adding deliberate weight to the dicta. Our comments are not random, passing, or inadvertent.
 

 JUDGMENT REVERSED AND CASE REMANDED FOR A FULL HEARING ON THE MERITS; COSTS TO BE PAID BY APPELLEE.