896 A.2d 1082

Anita F. WELLS

v.

Michael A. WELLS.

No. 845, Sept. Term, 2005.

Court of Special Appeals of Maryland.

April 13, 2006.

384

Aubrey Burton, Jr., Forestville, for Appellant.

Gary A. Rubard, Temple Hills, for Appellee.

Panel: DEBORAH S. EYLER, WOODWARD, RAYMOND G. THIEME, JR. (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

The Circuit Court for Charles County entered an order of default against Anita Wells ("Anita"), the appellant, in a divorce and child custody action brought against her by Michael Wells ("Michael"), the appellee. Following a master's hearing, which Anita did not attend, the court entered a default judgment of absolute divorce and granted custody of the parties' child to Michael. Anita thereafter filed a motion to vacate the order of default and a motion for new trial or to alter or amend the default judgment of divorce. Without holding a hearing, the court denied the motions. On appeal, Anita asks whether the court abused its discretion in denying her motions.

For the following reasons, we shall vacate the judgment and remand this case to the circuit court for further proceedings not inconsistent with this opinion.

## FACTS AND PROCEEDINGS

Anita and Michael were married on July 9, 1996, when they were in their early thirties. The marriage produced one child, Bradrick Wells, who was born on June 6, 1998.

During the marriage, the parties lived in Waldorf in a house Michael purchased before the marriage and that was titled in his sole name. Anita was employed as a nurse and Michael was employed as a construction project manager.

On September 14, 2004, in the Circuit Court for Charles County, Michael filed a complaint for absolute divorce, custody, and other appropriate relief, alleging that Anita had committed adultery. Anita was personally served with the complaint and a summons on September 27. She did not file an answer.

When the divorce action was filed, and at all relevant times until the divorce was granted, Michael, Anita, and Bradrick were living together in the marital home.

On November 3, 2004, after Anita had failed to file an answer, Michael moved for an order of default. There was no opposition filed. The court granted the motion on November 18. A notice of default order was mailed to Anita at the marital home.

Anita did not file a motion to set aside the default order. On February 17, 2005, the court issued a trial date notice, setting the case in for a master's hearing on April 1. The notice was mailed to each party at the marital home.

On April 1, 2005, a master's hearing was held as scheduled. Michael appeared with counsel and several witnesses. Anita did not appear.

At the hearing, Michael introduced into evidence the parties' marriage license; the deed to the marital home; his W2 form for the prior year; and one of Anita's recent pay stubs.

Michael testified that he and Anita still were living together in the marital home, with Bradrick. He said that in early September 2004 he learned from Bradrick (who would have been six years old at the time) that Anita had "been with some other guys." Michael "investigated" and found that "it was basically [going on] around the clock." He learned that one of the men was Trevor Johnson, a neighbor. Michael testified

that, thereafter, he did not sleep in the same bedroom with Anita or have sexual relations with her.

Michael testified that ordinarily he works Monday to Friday, 9:00 a.m. to 5:00 p.m. He takes care of Bradrick by "put[ting] him on the bus every morning for school ... help[ing] him with his homework ... [and] cook[ing] his dinner as well as his breakfast." His parents, who live across the street, take care of Bradrick in the afternoons. Bradrick loves the neighborhood where they live.

Michael's counsel asked him whether Anita had said anything when she was served with the complaint and summons. Michael replied, "The day [Anita] got the summons she never said anything to me about it at all." When asked whether Anita later had said anything to him about the existence of a divorce action, he responded that "she mentioned that she hadn't heard anything from the summons lately or mentioned to a point about is she supposed to hear something." Then, when asked if he ever saw the summons, he responded, "Yes.... It was in her glove compartment. I believe she showed it to me at first right after it was served to her by a server."

Michael called Trevor Johnson as a witness. Johnson testified that he had had a sexual relationship with Anita from late 2002 to mid–2003. He and Anita had intercourse a "whole lot of times." Sometimes Bradrick was present in the house at the time.

Finally, Michael's father, Clarence Wells, testified that Michael "is an outstanding father and good care giver. He cooks for [Bradrick], cleans him and takes care of him."

The master stated her findings and recommendations:

I am satisfied that Mr. Wells has shown by a preponderance of the evidence that his wife, [Anita], committed adultery. That was adequately corroborated by the witness who testified here and I will recommend that the plaintiff be granted an absolute divorce on the ground of adultery.

I am satisfied by the testimony that [Michael] is a fit and proper person to have custody of the minor child and I will recommend that he be awarded custody of Bradrick Wells with reasonable rights of visitation granted to [Anita].

The child has lived with Mr. Wells in the family home and I will recommend that he be granted use and possession of that home. . . . I am satisfied that is in the best interest of the child.

The other property the parties have acquired, if any, during the marriage has been divided in an appropriate manner.

. . .

I find that Ms. Wells earns 44 percent of the total income and that her monthly child support obligation is $480. So I will recommend that she pay that. . . . Beginning April 1st, 2005.

. . .

I am also going to recommend that [Michael] continue to provide health insurance for the minor child as long as it is available to him at reasonable cost through his employment.

A copy of the master's findings and recommendations was mailed to Anita at the marital home.

On May 16, 2005, the court entered a judgment of absolute divorce that adopted the findings and recommendations of the domestic relations master. The judgment was mailed to Anita at the marital home.

On May 24, 2005, Anita, through counsel, filed a motion to vacate the order of default and a motion for a new trial or to alter or amend the judgment of absolute divorce. In her motions, she alleged that she had been served with a complaint and summons, but that Michael had told her it was a settlement agreement. They had a conversation the day she was served in which they decided to stay together and not to separate. Michael told her to "tear up the papers," because he wanted to work on their marriage. She also alleged that, between September 2004 and March 2005, she and Michael

had had sexual relations multiple times, had slept in the same bed, and had carried on "all marital customs."

Anita further alleged that, other than the complaint and summons, she did not receive any documents from the court. On May 19, 2005, a deputy sheriff arrived at the marital home and asked to speak to her. He told her that she and Michael were no longer married and that she would have to vacate the premises. She said to Michael, who was present, that they could not be divorced because they were living together "as man and wife." Michael responded that they were divorced nevertheless, because she had committed adultery. When Anita refused to believe they were divorced, the deputy sheriff showed her the written judgment of absolute divorce.

Anita alleged that she told the deputy sheriff that she had not received any mail from the court about a divorce. At that time, Michael told her that there were items of mail awaiting her on the dining room table. That mail included correspondence from the court.

Anita reacted so severely to learning that she was divorced that she was hospitalized by the sheriff's department and placed on a suicide watch. The next day, Anita returned to the marital home. Some of her friends came over to help her pack her belongings. They found a box in the house that contained other pieces of mail from the court, addressed to Anita and unopened. According to Anita, it was the parties' practice for Michael to retrieve and sort the mail. She alleged that, unbeknownst to her, Michael had been "usurping" her mail from the court.

The allegations in Anita's motions were supported by her own affidavit.

In advancing her motion to vacate order of default, Anita argued that Michael never served her with his motion for order of default; the order was procured by Michael's fraud, and his further fraud prevented her from timely moving to vacate it; she had a meritorious defense to the grounds for divorce (condonation); she had a meritorious defense to Mi-

chael's claim for custody; and she acted with due diligence and good faith in moving to vacate the order.

In support of her motion for new trial, Anita argued that Michael had prevented her from participating in the master's hearing, by intentionally misleading her and deliberately intercepting her mail; that Michael's conduct deprived her of the opportunity to address his filings and motions; and that equitable considerations mandated a new trial.

Finally, in support of her motion to alter or amend, Anita argued that justice mandated opening the judgment to receive additional evidence about Bradrick's best interests; Michael's condonation of her alleged adultery; the value of the equity in the marital home, which she alleged was partially marital; other marital property; and the parties' salaries. She further argued that justice required that the court amend the judgment or enter a new judgment because the marital property issues were not resolved; it is in Bradrick's best interest for Anita to have, at least, a specific visitation schedule; it is in Bradrick's best interest for the court to reassess the amount and initial payment date of the child support; and the issue of alimony was not resolved.

Anita asked the court for hearings on all of her motions.

On June 13, 2005, Michael filed oppositions to Anita's motions. He denied that Anita ever mentioned the complaint and summons to him or that he ever told her to tear them up because he wanted to work on their marriage. He asserted that Anita should have known that the papers were not a separation agreement because one clearly was a complaint for divorce. He also asserted that he and Anita had not had sexual relations since September 2004, when he discovered her adultery, and that he had slept in a separate bedroom since then.

Michael also alleged that Anita had received all of the mail sent to her by the circuit court but that she routinely did not open her mail or respond to it. He added that, because Anita works the nighttime shift, she was home during the daytime when the mail would have arrived. Michael further alleged

that Anita was employed during the entire marriage, was not the primary caretaker of Bradrick, and had never made payments on the mortgage.

Michael submitted his own affidavit and an affidavit by his father in support of his allegations.

Michael argued that he was not required to serve Anita with his motion for order of default because she had been served with the complaint and summons and had received all correspondence from the court; therefore, there was no basis for the court to vacate the default order. He argued that the court should not alter or amend the judgment because an award of alimony would not be appropriate given that the marriage only was of eight years' duration and Anita is employed in a skilled profession; the house was titled in his sole name, Anita never made payments on it, and she did not deserve a monetary award; and the amount of the child support award was reasonable and any error in the initial payment date was *de minimis*.

On June 15, 2005, without holding a hearing, the circuit court denied Anita's motions.

Anita noted a timely appeal.

## DISCUSSION

Anita contends the trial court abused its discretion by denying her motion for new trial and to vacate the default judgment, under Rules 2–533, 2–534, and 2–613(g). She argues that her affidavit presented evidence that Michael committed fraudulent acts that deprived her of the right to participate in the trial. She also points out that Michael's testimony during the master's hearing was inconsistent with respect to what happened to the summons and complaint after she was served, which shows lack of credibility on his part; and that the court erred in setting a date for the commencement of child support, because she was living in the marital home until May 19, 2005.

Alternatively, Anita argues that at the very least the court abused its discretion by not holding an evidentiary hearing on her motions.

Michael responds that the court properly exercised its discretion in denying Anita's motions because her allegations were inconsistent as to whether she thought the complaint was a complaint for divorce or a separation agreement, and the number of times she and Michael had intercourse after the complaint was filed; and that the evidence she presented in support of her motions could not prove fraud by a clear and convincing standard. He also maintains that any error by the court with respect to the commencement date for child support was *de minimis*.

In Maryland, a default judgment is "considered more akin to an admission of liability than to a punitive sanction." *Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 434, 653 A.2d 934 (1995). Unlike default judgments in some other states, a default judgment in Maryland " 'is not meant to be a punitive measure that penalizes a party for breaching a procedural regulation.' " *Holly Hall Publ'ns v. County Banking & Trust Co.*, 147 Md.App. 251, 262, 807 A.2d 1201 (2002)(quoting *Royal Ins. Co. of America v. Miles & Stockbridge, P.C.*, 133 F.Supp.2d 747, 768 (D.Md.2001)). Instead, "Maryland law . . . does not weigh the balance so heavily against the truth seeking function of adversary litigation." *Curry, supra,* 337 Md. at 434, 653 A.2d 934. "[T]he Maryland Rules and caselaw contain a preference for a determination of claims on their merits; they do not favor imposition of the ultimate sanction absent clear support." *Holly Hall Publ'ns, supra,* 147 Md. App. at 267, 807 A.2d 1201.

Rule 2–613 governs the procedure for default judgments. It provides that, when the time for pleading has expired and the defendant has failed to plead, the court, on written motion of the plaintiff, shall enter an order of default, which shall be mailed to the defendant. The defendant may move to vacate the default order within 30 days of its entry. Md. Rule 2–613(b), (c), and (d). "If the court finds that there

is substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order." Md. Rule 2–613(e). Thus, the court must grant the motion to vacate if the defendant makes the necessary showing under the rule. *Carter v. Harris,* 312 Md. 371, 539 A.2d 1127 (1988); *Holly Hall Publ'ns, supra,* 147 Md.App. at 267, 807 A.2d 1201.

If a motion to vacate has not been filed, or has been filed and denied, the court, upon request, "may enter a judgment by default that includes a determination as to liability and all relief sought." Md. Rule 2–613(f). The decision whether to enter a default judgment, as the word "may" connotes, is discretionary. "If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate...." *Id.*

Because the defendant has an opportunity, under section (d) of Rule 2–613, to vacate the order of default that, in effect, is an adverse finding on liability, the defendant does not enjoy the same opportunity once the default judgment is entered. Rather, under section (g) of the Rule, " '[a] default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted.' " Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary,* at 516 (3d ed.2003) (quoting Md. Rule 2–613(g)).

Pursuant to Rule 2–535(a), for 30 days after the entry of judgment, the circuit court has general and broad revisory power over the judgment. In a bench trial, that revisory power authorizes the court to take any action with respect to the judgment that it could take under Rule 2–534. That power includes the discretion to "open the judgment to receive additional evidence, ... amend [the court's] findings or its statement of reasons for the decision, ... set forth additional findings or reasons, ... enter new findings or new reasons,

... amend the judgment, or .... enter a new judgment." Md. Rule 2–534. As noted, when a default judgment is entered, the court retains that broad revisory power only "as to the relief granted."

The narrow revisory power of the court under Rule 2–535(b) is unaffected by Rule 2–613(g). That revisory power, which the court has after a judgment is enrolled (i.e., more than 30 days after its entry), requires a showing of "fraud, mistake, or irregularity." Md. Rule 2–535(b).

A trial court's ruling on a motion to alter or amend under Rule 2–534, and on motions to revise under Rule 2–535(a), are reviewed for abuse of discretion. *Benson v. State,* 389 Md. 615, 653, 887 A.2d 525 (2005); *Wormwood v. Batching Systems, Inc.,* 124 Md.App. 695, 700, 723 A.2d 568 (1999). The existence of a factual predicate of fraud, mistake, or irregularity, necessary to support vacating a judgment under Rule 2–535(b), is a question of law. *In re Adoption/Guardianship No. 93321055/CAD,* 344 Md. 458, 475, n. 5, 687 A.2d 681 (1997). If the factual predicate exists, the court's decision on the motion is reviewed for abuse of discretion. *Id.* at 475, 687 A.2d 681.

In *Flynn v. May,* 157 Md.App. 389, 852 A.2d 963 (2004), this Court addressed a situation in which child custody and support were adjudicated by default. The child was born to parents who lived together but were not married. The mother and father separated and agreed that the mother would assume primary physical custody. Three years later, the father filed a petition for custody and child support. The mother attempted to respond *pro se,* but her answer was not accepted by the court because it lacked a certificate of service. After the time for pleading had passed, the father filed a motion for order of default, which went unopposed. The court granted the motion, and the mother did not move to vacate the default order.

The court scheduled a hearing on the father's petition. The mother appeared, but the court did not allow her to testify or present any evidence. After the court granted the father's

petition and entered a judgment giving him custody of the child and awarding him support, the mother retained counsel and filed a motion to alter or amend the default judgment. In her motion, she set forth her reasons for failing to file a proper answer and attested about why she had a meritorious defense. Without holding a hearing, the court denied the motion.

On appeal, we noted that the harsh effects of Rule 2–613(b) are ameliorated by subsections (e) and (f), which, respectively, afford the circuit court broad discretion to revise a default order and to establish the truth of any averment by evidence or to make investigation of any matter in entering judgment. Of those subsections, we observed, "That is a sweeping grant of discretionary authority and child custody is quintessentially a ground on which technicality and justice may be in stark collision." 157 Md.App. at 404, 852 A.2d 963. Explaining that the default judgment concept and procedure arose out of tort cases, in which liability and damages are distinct, we stated: "In a type of case in which there is a single unbifurcatable issue, an analogy to how default judgment is handled in the context of tort cases is impossible.... [D]efault judgment cannot substitute for a full evidentiary hearing when a court, in order to determine custody, must first determine the best interest of the child." *Id.* at 407, 852 A.2d 963.

We further observed that, because the best interest of the child is of "paramount importance" in a child custody and support case, the child has an "indefeasible right" to have the custody determination made only after a full evidentiary hearing involving both parents. *Id.* at 408–10, 852 A.2d 963. We concluded that the trial court had abused its discretion in ordering a change in the child's primary custody without permitting the mother's witnesses to testify or any other evidence to be offered; and therefore had abused its discretion in denying the mother's motion to alter or amend. In considered dicta, Judge Moylan, speaking for the Court, stated:

As sorely tempted as we are to hold flatly that the default judgment procedure of Maryland Rule 2–613 is not applica-

ble to child custody disputes, it is not necessary to go so far. . . . We nevertheless note that it is impossible for us to conjure up a hypothetical in which a judgment by default might ever be properly entered in a case of disputed child custody. We are not hereby transforming our dicta into a holding. We are, however, unabashedly adding deliberate weight to the dicta. Our comments are not random, passing, or inadvertent.

*Id.* at 411–12, 852 A.2d 963.

 Returning to the case at bar, we hold that the court abused its discretion by denying Anita's motion to vacate the default judgment as to all issues except the decision to grant a divorce. With respect to the issue of divorce, the court abused its discretion by denying the motion without holding an evidentiary hearing and making a factual finding on the issue of fraud. We explain.

To the extent that the "liability and damages" dichotomy that derives from actions at law and underlies the default judgment concept and procedure has an analogy in domestic litigation, which is in all respects equitable, the issues of divorce and annulment fall on the "liability" side and the issues that flow from divorce or annulment fall on the "damages," or in equitable terms, "remedy" side. It is only after the court has granted an absolute or limited divorce, or an annulment, so that the parties no longer will be functioning as a marital unit, that it may grant relief to address the consequences that come from that change in status. *See* Md.Code (1984, 2004 Repl.Vol.), section 7–107 of the Family Law Article ("FL") (authorizing circuit court to award either party reasonable and necessary expenses upon grant of divorce or annulment); FL sections 8–201 and 8–202 (authorizing court to equitably distribute marital property); FL sections 8–207 and 8–208 (authorizing court to determine use and possession of family home); FL sections 9–101 *et seq.* and 12–101 *et seq.* (authorizing court to grant custody and visitation of children, and order payment of child support); FL section 11–101 (authorizing court to grant an award of alimony).

██ The extra imprimatur of finality for default judgments, under Rule 2–613(g), does not apply to decisions about relief. In a divorce case, "relief" encompasses child custody, visitation, support, alimony, distribution of marital property, use and possession, and counsel fees. A judgment by default that decides any such issue is subject to the court's broad revisory powers, under Rules 2–535(a) and 2–534, on the issue or issues so decided.

██ Anita's motion to set aside the default judgment was filed within days of the entry of the judgment, and well before it would have become enrolled. With respect to the adjudication of all issues except divorce, the trial court's decision to deny Anita's motion is reviewed for abuse of discretion. The considerations that must be taken into account when a court decides whether to vacate an order of default are relevant to deciding whether the court abused its discretion in refusing to vacate a judgment by default on relief. Those considerations include whether there was a showing by the moving party of a substantial and sufficient basis for an actual controversy as to the merits; whether there was an equitable excuse for the failure to plead; and whether the exercise of discretion was in favor of ensuring that justice is done. *See Holly Hall Publ'ns, supra,* 147 Md.App. 251, 807 A.2d 1201.

██ The court's decision to deny Anita's motion to vacate the default judgment on the issues of child custody, support, visitation, use and possession, equitable distribution, and alimony was a clear abuse of discretion. On the interrelated issues of custody, visitation, support, and use and possession of the family home, *Flynn* teaches that Bradrick had an indefeasible right to have his best interests considered in a full evidentiary hearing. As we have already observed, "default judgment cannot substitute for a full evidentiary hearing when a court, in order to determine custody, must first determine the best interest of the child." *Flynn, supra,* 157 Md.App. at 407, 852 A.2d 963.

Regardless of the factual merit of the allegations in Anita's motions, as supported by her affidavit, the motions made plain

that this was not an uncontested custody case in which an answer was not filed because the parties were in agreement about what would serve Bradrick's best interest. Also, it was undisputed that throughout the litigation, Bradrick had been living in one house, with both of his parents—a highly unusual situation. The removal by law enforcement of one parent from the family home, when the family has been living as a unit in that home, is perhaps even more unusual. This case cried out for a full evidentiary hearing, with both parents participating, that would focus on Bradrick and what would be best for him.

The court likewise abused its discretion in denying the motion to vacate with respect to the issues of equitable distribution and alimony. In her affidavit, Anita made a showing that, although the family home was titled solely in Michael's name and had been purchased by him before the marriage, payments on the mortgage during the marriage were made with marital funds. Thus, Anita made a substantial and sufficient showing of an actual controversy as to whether she was entitled to relief in the form of equitable distribution of a marital share of that property. In addition, the master's finding that the parties had divided all of the marital property between them was unsupported by any evidence in the record. Indeed, there was no evidence presented at the master's hearing of what marital property even existed. Finally, Anita presented evidence that could be relevant to an alimony determination that was not presented at the master's hearing.

We note, in addition, that there was no evidence whatsoever that Michael would suffer any prejudice by the granting of the motion to vacate. The motion was filed eight days after the judgment of divorce.

With respect to the issue of divorce, Anita's affidavit was sufficient to show that she could produce admissible evidence that, if credited, would support a finding that the judgment of divorce was procured by fraud, within the meaning of Rule 2–535(b). Fraud under that rule means extrinsic

fraud, that is, fraud that actually prevents an adversarial trial. *Das v. Das*, 133 Md.App. 1, 18–19, 754 A.2d 441 (2000)(observing that extrinsic fraud necessary to set aside an enrolled judgment of divorce would include something that "prevents the adversarial system from working at all[,] ... such as a false promise of compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff")(internal quotation omitted); *see also Croyle v. Croyle*, 184 Md. 126, 40 A.2d 374 (1944)(setting aside judgment of divorce when facts alleged by wife would prove that husband fraudulently prevented her from participating in divorce proceedings).

Here, Anita attested that Michael represented that the complaint was a separation agreement and, in any event, told her to tear up the document because he did not want them to separate; and then intercepted her mail from the court so that she did not know that there was a divorce case that was progressing through the court system, that a master's hearing was being held, and, ultimately, that the judgment was entered divorcing the parties.

By affidavit, Michael contested every assertion that Anita made in support of extrinsic fraud, attesting instead that she knew that the litigation was ongoing, and received all of the mail from the court but ignored it and did nothing to participate in a process she was fully aware of. The affidavits of the parties thus were diametrically opposed, on their faces.

Only a credibility assessment, largely demeanor-based, could resolve the conflict as to whether the judgment of divorce was obtained by fraud. In that circumstance, it was impossible for the court to fairly assess the allegation of fraud without holding an evidentiary hearing. *See Taylor v. State*, 388 Md. 385, 398–99, 879 A.2d 1074 (2005) ("[W]here (1) material evidence is in conflict, (2) resolution of that conflict depends on a determination of the credibility of the witnesses through whom the conflicting evidence is presented, and (3) there are no factors apparent in the record that would enable a finder of fact reliably to judge the credibility of the wit-

**400**

nesses, any determination made by the trier of fact is necessarily arbitrary and cannot stand.")

█ Michael argues that the court properly denied Anita's motion to vacate because she could not prove fraud by a clear and convincing evidence standard. To be sure, fraud must be proven by that standard. *Hoffman v. Stamper*, 385 Md. 1, 16, 867 A.2d 276 (2005). Whether it indeed will be proven here is a function of how much weight a fact-finder will place upon Anita's evidence in support of her fraud allegation. Again, that process of assessing credibility and weighing evidence of necessity requires a full evidentiary hearing. Accordingly, the court's decision to deny Anita's motion to vacate without holding such a hearing, on the issue of divorce, was an abuse of discretion.

**JUDGMENT VACATED ON ALL ISSUES EXCEPT DIVORCE. CASE REMANDED FOR AN EVIDENTIARY HEARING ON THE ISSUE OF FRAUD WITH RESPECT TO THE JUDGMENT OF DIVORCE AND FOR A NEW TRIAL ON ALL OTHER ISSUES. COSTS TO BE PAID BY THE APPELLEE.**